**E-FILED**
Monday, 19 September, 2005  02:14:47 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 02-CR-20014 |
| | ) | |
| PHILIP D. JONES, | ) | |
| | | |
| Defendant. | | |

EXHIBIT "A"
SENTENCING TRANSCRIPT MAY 30, 2003

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Docket No. 02-20014

       Plaintiff,

   vs.

Urbana, Illinois
May 30, 2003
PHILIP D. JONES,            1:45 p.m

       Defendant.


SENTENCING HEARING

BEFORE THE HONORABLE MICHAEL P. McCUSKEY
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S :

For the Plaintiff:      COLIN S. BRUCE, ESQUIRE
Assistant United States Attorney
201 South Vine Street
Urbana, Illinois  61802
(217) 373-5875

For the Defendant:     JOHN C. TAYLOR, ESQUIRE
Reisman & Taylor
110 West Main Street
P.O. Box 395
Urbana, Illinois  61803-0395
(217) 344-9337



Court Reporter:        LISA KNIGHT COSIMINI, RMR-CRR
Official Court Reporter
201 South Vine Street, Suite 344
Urbana, Illinois  61802
(217) 384-2290

Proceedings recorded by mechanical stenography; transcript
produced by computer.

USA v. PHILIP D. JONES, Case No. 02-20014

1          THE COURT:  This is the United States of America

2     versus Philip D. Jones, Case Number 02-20014.

3          Present in open court is the defendant, Philip

4     D. Jones.  He's in custody awaiting sentencing, accompanied by

5     his counsel, John C. Taylor of Urbana, Illinois.

6          The United States of America is represented by

7     Colin S. Bruce, assistant U. S. attorney.

8          And the probation office here in Urbana is

9     represented by Donna S. Brown, U. S. probation officer for the

10     Central District of Illinois.

11          On February 11, 2003, the defendant was found

12     guilty of the charges in the indictment by a jury sitting here

13     in Urbana in the U. S. District Court, and I entered a

14     judgment of conviction at that time.

15          The case was then -- an order was then entered

16     directing probation to prepare a Presentence Investigation

17     Report which has been prepared by Ms. Brown as of April 8th,

18     revised on May 5th and May 28th.

19          In the presentence report of Ms. Brown, she

20     indicates that, Mr. Bruce, you have advised her that you have

21     no objections; is that correct?

22          MR. BRUCE:  That's correct.

23          THE COURT:  You've received and reviewed the

24     presentence report as well as the revisions, and you're

25     satisfied with its accuracy?

3

1           MR. BRUCE:  Correct, Your Honor.  And I also
2    received the recent addendum in response to Mr. Jones'
3    handwritten objection.
4           THE COURT:  And you accept the position that the
5    probation is taking, and you agree with their position?
6           MR. BRUCE:  It's virtually identical to mine.
7           THE COURT:  Now, we'll take up the unresolved
8    objections; but, first, Mr. Taylor, in the presentence report,
9    Ms. Brown indicates that you had written her on April 25th
10   advising her of two objections to the presentence report.  One
11   of the objections was later withdrawn, and a second objection
12   was resolved by a modification to the report.  Is that
13   correct?
14          MR. TAYLOR:  Yes, Your Honor.
15          THE COURT:  And are you satisfied with the
16   presentence report as it has been filed and revised by the
17   probation office?
18          MR. TAYLOR:  I am, Your Honor.
19          THE COURT:  So you have no unresolved objections
20   that you will be filing to the presentence report on -- as an
21   attorney for the defendant?
22          MR. TAYLOR:  That is a correct statement of fact,
23   Your Honor.
24          THE COURT:  Now, have you discussed with Mr. Jones
25   the presentence report and the guidelines?

USA v. PHILIP D. JONES, Case No. 02-20014

1          MR. TAYLOR:  I have, Your Honor.

2          THE COURT:  And have you advised him that you are

3    not going to file any objections to the presentence report?

4          MR. TAYLOR:  I have, Your Honor.

5          THE COURT:  And did he indicate to you that he

6    would be filing an objection?

7          MR. TAYLOR:  Well, I have to directly answer that

8    question no, Your Honor.

9          THE COURT:  Okay.  But you received from the Court

10   correspondence responding to Mr. Jones indicating that he

11   could if he wished file his own objections?

12         MR. TAYLOR:  I have received such correspondence

13   from Your Honor.  Thank you, Your Honor.

14         THE COURT:  Okay.  And did you have a chance to

15   discuss with Mr. Jones that correspondence in any way?

16         MR. TAYLOR:  Yes, I did, Your Honor.

17         THE COURT:  And you did not in any way take any

18   action to keep Mr. Jones from filing objections, did you?

19         MR. TAYLOR:  I did not, Your Honor.

20         THE COURT:  Okay.  Thank you, Mr. Taylor.

21         MR. TAYLOR:  Thank you, Judge.

22         THE COURT:  Mr. Jones, have you -- you've received

23   and reviewed the presentence report in this case?

24         DEFENDANT JONES:  Yes.

25         THE COURT:  And you've discussed it with Mr.

USA v. PHILIP D. JONES, Case No. 02-20014

1    Taylor?

2              DEFENDANT JONES:  Yes.

3              THE COURT:  And he's discussed the guidelines with

4    you?

5              DEFENDANT JONES:  Yes.

6              THE COURT:  And then you did correspond with me,

7    writing me a letter on May 13, 2003, which was filed on --

8    received by me on May 15th.  It says that "I'm writing you

9    today because I need to know:  If I wanted to file my own

10   objections pertaining to my case, is there a time limit on

11   this important matter?  And if so when?

12             "Also, I have the same question regarding the PSI

13   report because I want to object to being a career offender.

14   My attorney didn't object to that.  I'm scheduled to be

15   sentenced May 30, 2003.  Everything I want objected to, I want

16   to make sure I'm able to make it a part of the record to

17   preserve my rights for future references.  Thank you for your

18   time, and I'll be looking forward to hearing from you."

19             As a result of that, I sent a letter to -- I did

20   not know whether that letter had been sent to Mr. Taylor, Ms.

21   Brown in probation, or Mr. Bruce.  So I wanted to make sure

22   they were aware of it, as well as my response.  So I'm not

23   allowed to give legal advice to anybody, but I did think this

24   was something that many times I do cover at the time of

25   ordering the presentence report and may have failed to do when

USA v. PHILIP D. JONES, Case No. 02-20014

1   I do tell defendants they have an individual right to file

2   objections.   I thought it was a necessary part of my duties as

3   a judge in, not trying to give legal advice, but making Mr.

4   Jones aware of what he needed to do.

5                   So it's -- so I responded on the 15th.   It was

6   filed on the 16th of May.   "I'm in receipt of your letter

7   dated May 13, 2003.   You are correct that you can file

8   objections to the Presentence Investigation Report challenging

9   your career offender status, as well as object to any other

10  matters you believe are relevant to your criminal history

11  category and offense level.

12                  "Pursuant to the enclosed order, your objections

13  are not to be filed with the Court.   They're to be sent to the

14  U. S. Probation Office in Urbana with copies to Assistant

15  U. S. Attorney Colin S. Bruce and your attorney, John Taylor.

16  Your objections are to be sent within 14 days of receipt of

17  the Presentence Investigation Report.

18                  "Any further questions should be directed to your

19  attorney.   As the trial and sentencing judge in your case, I

20  cannot furnish legal advice to you."

21                  Mr. Jones, you received that letter from me?

22                  DEFENDANT JONES:   Yes, sir.

23                  THE COURT:   Okay.   And then in response to the

24  Presentence Investigation Report that was received by the

25  government, the government responded on May 27, 2003, with a

USA v. PHILIP D. JONES, Case No. 02-20014

1   commentary; and then the government also supplemented that

2   commentary on May 28th.

3           Mr. Taylor, have you received the government's

4   commentary and supplemental commentary?

5           MR. TAYLOR:  Yes, Your Honor.

6           THE COURT:  Okay.  And, Ms. Brown, did you receive

7   any objections to the presentence report from Mr. Jones?

8           PROBATION OFFICER BROWN:  Yes, I did, Your Honor.

9           THE COURT:  And was that -- you've characterized

10  that in this Presentence Investigation Report by a recent

11  revision; is that correct?

12          PROBATION OFFICER BROWN:  Yes, I did.

13          THE COURT:  And that revision is now on page 19 and

14  20, and it reads that "In a letter dated May 22, 2003,

15  Defendant Philip Jones reported the following unresolved

16  objection to the presentence report.  Defendant objects to his

17  classification as a career offender pursuant to Sentencing

18  Guidelines Section 4B1.1.  Defendant Jones asserts that his

19  prior conviction of attempted delivery of a controlled

20  substance, Macon County Circuit Court Case 94-CF-748 for which

21  Mr. Jones received a sentence of two years in the custody of

22  the Illinois Department of Corrections, was not a felony

23  conviction; and, therefore, the conviction may not be used as

24  one of the two necessary felony controlled substance/crime of

25  violence convictions necessary to apply the career offender

USA v. PHILIP D. JONES, Case No. 02-20014

1    adjustment.

2         "Defendant Jones contends that based on an error

3    made by the State Court judge in his sentencing in 94-CF-748,

4    he was wrongly sentenced to a penitentiary sentence on that

5    conviction.

6         "Defendant Jones bases this objection on applicable

7    Illinois law, specifically 720 ILCS 5/8-4, which provides that

8    any attempt charge that is a Class 3 or 4 felony automatically

9    is a reduced charge which carries a maximum sentence of no

10   more than 364 days in the county jail.  The defendant notes

11   that in regard to Case 94-CF-748, he was charged with Class 1,

12   Class 3, and Class 4 felonies; however, the Class 1 felony

13   designation did not apply to his case because he possessed

14   less than the required one gram of a controlled substance.

15   Defendant Jones noted that although he pleaded guilty to a

16   Class 3 felony, attempted delivery of a controlled substance,

17   pursuant to 720 Illinois Compiled Statutes 5/8-4 he should

18   have been sentenced to a term of no more than 364 days in the

19   county jail.

20        "Defendant Jones concludes that based on an error

21   in his sentencing in Case 94-CF-748 he does not have two

22   felony controlled substance offenses, and a classification as

23   a career offender in the federal system is not warranted."

24        Mr. Jones, has Ms. Brown accurately stated your

25   objection to the presentence report?

9

1          DEFENDANT JONES:  Yes.

2          THE COURT:  Now, is that the only unresolved

3   objection you sent to her?

4          DEFENDANT JONES:  Yes.

5          THE COURT:  Is that the only unresolved objection,

6   then, you want the Court to hear today?

7          DEFENDANT JONES:  Yes.

8          THE COURT:  Okay.  As to the other matters in the

9   presentence report, you're not raising any objections?

10         DEFENDANT JONES:  No, sir.

11         THE COURT:  And Mr. Taylor has raised none.  Mr.

12  Bruce has raised none.  So we will be taking up this

13  unresolved objection that's been set forth by Ms. Brown.

14         And, Mr. Bruce, I know you've addressed it before

15  in your commentary and supplement; but you may, for the

16  record, address it again.

17         MR. BRUCE:  That specific objection, Your Honor?

18         THE COURT:  Yes.

19         MR. BRUCE:  May it please the Court, Mr. Taylor.

20         Your Honor, essentially what the defendant is

21  trying to do is mount a collateral attack on a prior

22  conviction.  As I indicated in my supplement to the commentary

23  that I originally filed -- and, Your Honor, I thank the

24  defendant for actually serving me that; I appreciate it -- it

25  requires three factors to be met before a person can be

1    designated as a career offender under the sentencing

2    guidelines, specifically Sentencing Guidelines Section 4B1.1A.

3         The three criteria are that he has to be at least

4    18 years old at the time of the instant offense; second, the

5    instant offense has to be either a crime of violence or a

6    controlled substance offense as defined in the sentencing

7    guidelines; and, third, that the defendant has to have been

8    previously convicted -- that is, prior to the instant

9    offense -- of at least two crimes of violence or controlled

10   substance offenses.  Any combination that add up to two.

11        The defendant clearly has a 1999 conviction for

12   possession of cannabis with intent to deliver.  He received a

13   five-year sentence.  That's referenced in PSR paragraph 37.

14   He is attempting to collaterally attack his 1994 possession of

15   cocaine with intent to distribute conviction.  For that

16   conviction, he received a two-year prison sentence.

17        THE COURT:  Did he serve time in the Illinois

18   Department of Corrections in excess of 364 days?

19        MR. BRUCE:  I believe that he did, Your Honor;

20   although, I think that would be a combination of time spent in

21   the county jail and Illinois Department of Corrections, but

22   the time would add up to more than 364 days.

23        THE COURT:  But is there anything in the record

24   that would indicate that he did not receive a two-year

25   Illinois Department of Corrections sentence?

USA v. PHILIP D. JONES, Case No. 02-20014

1        MR. BRUCE:  No.  And, in fact, Your Honor, the

2    record would indicate the exact opposite.

3        THE COURT:  And he was ultimately released from the

4    Department of Corrections?

5        MR. BRUCE:  That's correct.

6        I guess, Your Honor, what it -- you know,

7    essentially what this comes down to is, rather than get into

8    the merits of it, you know -- the Court does need to do so.

9    The Seventh Circuit just last year in the Hubbert case, 6 Fed.

10   Appx. 454, a Seventh Circuit case, talks about how prior

11   convictions cannot be collaterally attacked to determine

12   federal sentences.  In that case, they cite the U. S. Supreme

13   Court, and the Supreme Court back in 1994 in the Custis

14   decision, C-u-s-t-i-s, which is 511 U. S. 485, indicated that

15   a defendant cannot collaterally attack prior convictions used

16   to determine sentencing enhancements in Federal Court as long

17   as the person had the right to counsel as established in

18   Gideon v. Wainwright; and Justice -- I should say Judge

19   Easterbrook verified the Ryan v. United States, 214 F.3d 877,

20   Seventh Circuit case, saying specifically that that analysis

21   applies to the career offender guidelines, the exact guideline

22   we're using in this case.

23       So in essence, Your Honor, the Seventh Circuit

24   would direct the Court not to even get into the merits of the

25   defendant's conviction.  He has a felony conviction.  He

USA v. PHILIP D. JONES, Case No. 02-20014

1    received more than two years -- a sentence of more than two

2    years in prison.  Even if that sentence was entirely illegally

3    imposed, it doesn't matter.  He cannot collaterally attack it

4    now.

5              THE COURT:  Thank you, Mr. Bruce.

6              Mr. Jones, you may respond.  It's your objection,

7    and you can remain seated there.

8              DEFENDANT JONES:  Clearly, it was a mistake made;

9    and if the case -- if I get it back in court and it gets

10   overturned, suspended, or whatever and it gets dropped down to

11   a misdemeanor, then my right still then -- I can bring this

12   back up in court, right?

13             THE COURT:  Well, I can't give you the legal advice

14   as to here; but what you're saying is if somehow you can get

15   the State Court case set aside, then you wouldn't have two

16   prior convictions in this case.

17             So as to your ability to get that done in State

18   Court -- and I was a former Court of Appeals judge.  You were

19   represented by legal counsel in Case 94-CF-748; is that

20   correct?

21             DEFENDANT JONES:  Yes.

22             THE COURT:  You pled guilty, and you were sentenced

23   to two years in the Department of Corrections.  Correct?

24             DEFENDANT JONES:  Yes.

25             THE COURT:  And you were ultimately transported to

1    the Department of Corrections, correct?

2                    DEFENDANT JONES:  Correct.

3                    THE COURT:  Now, did you ever file a notice of

4    appeal in that case, 94-CF-748?

5                    DEFENDANT JONES:  No.

6                    THE COURT:  Have you ever gone into State Court to

7    attack its validity by legal action filed in Macon County?

8    That was a Decatur case, right?

9                    DEFENDANT JONES:  Yes.

10                   THE COURT:  Have you ever done that?

11                   DEFENDANT JONES:  No.

12                   THE COURT:  So this is the first time that you're

13   raising the issue in a court?

14                   DEFENDANT JONES:  Yes.  Honestly, I was a layman to

15   the term, and I just -- when I pleaded guilty, I thought my

16   counsel was gonna, you know, lead me the right way; and by

17   law, he didn't even lead me the right way.  I should never

18   have been sentenced.  So I had ineffective counsel because he

19   didn't even know the law hisself.

20                   THE COURT:  Well, those are matters that -- what

21   Mr. Bruce is saying is that under federal law -- and I agree

22   with him.  And Mr. Taylor wasn't trying to ignore you or be

23   ineffective.  But Mr. Taylor was, I think, taking the position

24   of the Seventh Circuit law of Illinois, Wisconsin, and Indiana

25   as set forth in the case, four cases cited in the presentence

14

USA v. PHILIP D. JONES, Case No. 02-20014

1    report, <u>U. S. v. Hubbert</u>, H-u-b-b-e-r-t, <u>Ryan v. United</u>

2    <u>States</u>, <u>United States v. Killion</u>, K-i-l-l-i-o-n, and <u>United</u>

3    <u>States v. Arango-Montoya</u>, A-r-a-n-g-o, M-o-n-t-o-y-a, which

4    are cited on page 20 of the presentence report.  All stand for

5    the proposition that your attack can't start here, that this

6    is not the place to attack eight or nine years later a State

7    Court conviction.

8              And so the only thing I'm supposed to look at is:

9    Were you 18 at the time of the offense?  Yes.

10              Was it a crime of violence or controlled substance

11   under the statute?  Yes.

12              And do the total of them come to two?  Yes.

13              When you add the '94 conviction with the '99, you

14   meet the requirements of the Sentencing Guideline Section

15   4B1.1(a).

16              Now, the question that I can't answer for you -- I

17   can tell you the status here and the law here.  I cannot tell

18   you whether -- what your standing would be or your chances of

19   success would be in State Court for attacking that 94-CF-748.

20   You may have, very well have a problem that that is -- it is

21   too late to make such an attack; that your time to appeal,

22   collaterally attack, or file any action in Macon County has

23   passed.  But the only place to get that answer is in State

24   Court.

25              Here, I think the law is clear, Mr. Bruce, that I

USA v. PHILIP D. JONES, Case No. 02-20014

1    do not have the discretion to enter into an intellectual

2    argument or research about that case at the Federal Court

3    level in a sentencing hearing.

4         MR. BRUCE:  That's absolutely correct, Your Honor.

5    Both the Seventh Circuit and the U. S. Supreme Court have said

6    that.

7         THE COURT:  So that I'm precluded here from looking

8    into that State conviction that has been rendered when you had

9    legal counsel back in that 94-CF-748 case.

10        And, also, I can't give you the legal advice as to

11   your chances of success down there.

12        Now, obviously, if you were successful in State

13   Court, then you would probably be coming into Federal Court

14   with an action on habeas corpus as to why you shouldn't be

15   held as a career offender here after you were able to set

16   aside the State conviction.

17        But the answer to your question doesn't -- isn't

18   for me to decide in a Federal Court in sentencing for

19   something that you did have a lawyer.  It is a State case, and

20   that's where you're going to have to seek your, your justice.

21        Okay.  Do you understand that?

22        DEFENDANT JONES:  Yes.

23        THE COURT:  Okay.

24        DEFENDANT JONES:  Thank you for letting me argue

25   that.

1     THE COURT:  Well, we're glad to do that.  And

2    that's why Mr. Taylor -- Mr. Taylor, he wasn't trying to dodge

3    you.  He was agreeing that that is the law of the Seventh

4    Circuit and that I don't have the discretion to open this up

5    and look into it at this point in a sentencing hearing.

6    So he wasn't trying to ignore you.  He was just saying, "I

7    don't think your argument will be successful."

8         But when you wrote me, it falls into the category

9    that you're not required to agree with everything that Mr.

10   Taylor does because I tell people at sentencing you have the

11   individual right to raise any objection you wish.  I will hear

12   it just the same as if it was raised by your attorney; and

13   then after I hear those objections, the Court will rule on

14   your criminal history, your offense level, so that it is not

15   unusual for me to hear objections like this that you've raised

16   that your attorney didn't raise.

17        They have a requirement under the law that says

18   that if they believe an argument is without merit that they

19   shouldn't be making it just because you want them to.  You,

20   not being a lawyer as you've said, have the right to raise any

21   legitimate argument you believe, and I think this is a

22   legitimate question for you to raise.  Obviously, the law is

23   not on your side as for me to hear it here in a sentencing

24   when it was a State case that you could have appealed and were

25   represented by counsel.

1    So, if there's further legal action, you'll have to

2    be taking it on this issue in Macon County.  If you're

3    successful there, then you can come back to Federal Court

4    another day.  But first you'll have to be successful in the

5    State Court.

6    And that takes care of all of the unresolved

7    objections that had been filed by Mr. Jones.  And he had

8    indicated previously he had no objection to the remaining

9    portion of the presentence report.

10    So the Court as to the sole unresolved objection

11    referencing page 7, paragraph 30, adopts the position of the

12    government and the probation office that based on the Court's

13    review in this case of United States Sentencing Guidelines

14    Section 4B1.1, the defendant was 18 years of age at the time

15    of the commission of this offense; two, the offense before the

16    Court that he's pled guilty is a crime of, defined as a crime

17    of violence or a controlled substance offense.  In this case,

18    it's a controlled substance offense. And the defendant must

19    have two prior felony convictions of either a crime of

20    violence or a controlled substance offense.

21    Based on the Court's ruling in the 94-CF-748, as

22    well as the other felony conviction, the Court finds that the

23    defendant, Philip D. Jones, is a career offender pursuant to

24    Sentencing Guidelines Section 4B1.1.

25    As to the other paragraphs of the presentence

USA v. PHILIP D. JONES, Case No. 02-20014

1   report, there have been no objections.  The Court's reviewed

2   them, finds them to be appropriate by a preponderance of the

3   evidence; and the Court adopts those paragraphs at this time,

4   pages 1 through 18, paragraphs 1 through 82, as the findings

5   of the Court by a preponderance of the evidence.

6           Ms. Brown, the offense level in this case has been

7   calculated at 37.  The criminal history category is VI.  The

8   statutory provisions call for custody of ten years to life;

9   probation is not authorized; supervised release is not less

10  than eight years; community restitution applies; a fine of up

11  to $4 million if the defendant has the ability to pay; special

12  assessment mandatory of $100.

13          Ms. Brown, do you agree those are the statutory

14  provisions that Mr. Jones faces today?

15          PROBATION OFFICER BROWN:  Yes, I do, Your Honor.

16          THE COURT:  Do you likewise agree with that, Mr.

17  Bruce?

18          MR. BRUCE:  I do.

19          THE COURT:  And, Mr. Taylor, without waiving any of

20  your client, Mr. Jones' right to appeal the decision of the

21  Court that he is an armed -- that he is a career offender

22  under 4B1.1(a), do you agree with the statement of the Court

23  that since it's found him to be a career offender that he does

24  face under the statute the ten years to life?

25          MR. TAYLOR:  Yes, Your Honor.

1    THE COURT:  As well as the other provisions stated?

2    MR. TAYLOR:  Yes, Your Honor.

3    THE COURT:  Okay.  Ms. Brown, with the career

4    offender status having been determined, offense level

5    37/criminal history category VI, the defendant faces a

6    guideline range of 360 months to life; probation is not

7    authorized; supervised release not less than eight years;

8    community restitution applies; a fine range of 20,000 to $4

9    million if he has the ability to pay; a special assessment

10   mandatory of $100.

11       Ms. Brown, are those the correct guideline

12   provisions facing Mr. Jones?

13       PROBATION OFFICER BROWN:  Yes, they are, Your

14   Honor.

15       THE COURT:  Do you agree with that, Mr. Bruce?

16       MR. BRUCE:  Yes.

17       THE COURT:  Without waiving your client, Mr. Jones'

18   right to appeal the career offender status found by the Court,

19   once the Court has so found, do you agree with the guideline

20   provisions stated, Mr. Taylor?

21       MR. TAYLOR:  Yes, Your Honor.

22       THE COURT:  Mr. Bruce, the government have any

23   witnesses it intends to call in aggravation?

24       MR. BRUCE:  No, sir.

25       THE COURT:  The government has filed its commentary

1   and amended commentary, which states that the defendant did

2   not cooperate with law enforcement officials; and there is no

3   basis for a motion for downward departure pursuant to 18 USC

4   Section 3553(e) and U. S. Sentencing Guidelines Section 5K1.1

5   for cooperation and assistance.  That is still the position of

6   the government today?

7               MR. BRUCE:  Yes, it is, Your Honor.

8               THE COURT:  The government did not in the

9   commentary make a recommendation as to sentencing.  You may do

10  that at this time.

11              MR. BRUCE:  May it please the Court, Mr. Taylor.

12              MR. TAYLOR:  Mr. Bruce.

13              MR. BRUCE:   Your Honor, most Fridays when we get

14  ready to do sentencings, we face either one of two categories

15  of defendants in a very broad picture, those that have pled

16  guilty and are probably going to get or are entitled to the

17  low end of the sentencing guideline range that applies or

18  perhaps even receive a downward departure.

19              The second and less frequent category are those who

20  are convicted after trial and you have a range that allows the

21  Court to, perhaps, not go to the minimum of the applicable

22  range but at least go to the clearly defined middle or upper

23  end of the range.

24              That's not the case here today, Your Honor.  Today

25  we have a defendant who faces a range of 360 months at a

USA v. PHILIP D. JONES, Case No. 02-20014

1    minimum -- that is, 30 years at the minimum -- and life

2    imprisonment, life without the chance of parole, should he

3    receive the upper end of the guidelines.

4              So, Your Honor, in this instance, I think this

5    defendant clearly does not -- he's not entitled to the low end

6    of the guidelines, the 360 months.  The low end of the

7    guidelines is typically more suited -- it's more appropriate

8    for those defendants who have pled guilty even if they choose

9    not to cooperate.  That is more or less in fairness to both

10   this defendant and other defendants.  The low end is for those

11   defendants who have entered guilty pleas.

12             In the rare instance, Your Honor, it might be for

13   those defendants who have never had previous convictions whose

14   criminal records are clean who are perhaps for the first time

15   entering into the criminal justice system.  That's not the

16   case here.

17             This defendant has multiple prior felony

18   convictions.  In fact, this defendant has been to prison on

19   several occasions for several years.  In fact, if you look at

20   his criminal history, he started off dealing with drugs back

21   when he was 16.  He's now 26.  He'll be 27 this year.  So for

22   the last ten years, he's either been involved in drug dealing

23   or in prison.  So this is not a defendant who is entitled to

24   the low end of the guidelines.

25             On the other hand, even though the defendant

USA v. PHILIP D. JONES, Case No. 02-20014

1    exercised his constitutional rights, put the government to its

2    burden of proof and was convicted after trial, perhaps the

3    high end of the range in this case would not be appropriate

4    because the high end in this instance is life, life without

5    possibility of release.

6         Frankly, that same criminal history which I believe

7    forecloses getting the defendant the low end of the guidelines

8    perhaps saves him from getting the high end of the guidelines;

9    that is, the rest of his life in prison.  He doesn't have an

10   extensive criminal history.  It's not horrendous.  Your Honor,

11   you and I and I'm sure Mr. Taylor have all seen criminal

12   histories that were much longer with much more heinous crimes

13   than this defendant.  If you were to give the defendant life

14   in this case, he couldn't get any good time, and he would

15   never ever leave federal custody.  He would be there until he

16   died.

17        Your Honor, frankly, this defendant seems to me to

18   be a person who needs to be sentenced at the middle of the

19   applicable guideline range.  But therein lies the rub.  What

20   is the middle of 30 years to life?  So I know, Your Honor, we

21   have faced a similar situation on previous occasions; and the

22   Court has asked before:  Well, what's somebody's life

23   expectancy?  At this time, Your Honor, I can give you an

24   answer, and I hinted at that in my footnote.

25        THE COURT:  A life expectancy based on people who

1    are in the Federal Bureau of Prisons versus those people who

2    live outside of the Bureau of Prisons, that's always my

3    question.

4            MR. BRUCE:  Your Honor, I have -- I'm smiling

5    because I have a very good answer.  I had the -- if I could

6    just take a moment.  I first contacted the Bureau of Prisons.

7    They have no statistics they could give me whatsoever.  They

8    directed me to the, another branch of the Department of

9    Justice, the Bureau of Justice Statistics.  They do collect a

10   variety of stats but not of this nature.  That's not their

11   mandate.  They directed me to the Department of Health and

12   Human Services, National Center for Health Statistics.

13           And I contacted an individual there who was very

14   knowledgeable and, in fact, educated me; and I hope I can now

15   educate the Court about a few things regarding life

16   expectancy.  I originally began my conversation with this

17   gentleman by indicating I wanted to know how much someone's

18   prison time would reduce their life expectancy, thinking

19   that -- I think as the Court does, as I know the Court does --

20   that would reduce someone's life expectancy.

21           I was shocked; and if you'll bear with me, I'll

22   explain why.  I was shocked to learn that it does not make a

23   statistical difference whether the person is in custody or

24   not.  Frankly, I think I offended this gentleman because I was

25   almost hostile in my response saying that's outrageous.

1            What he then explained to me, Your Honor -- and I

2    thought that was very interesting -- because of the way

3    statistics are gathered, they come from all over the United

4    States.  Whenever someone dies, a variety of information has

5    to be collected by federal law and is passed on.

6            As he explained to me, yes, prison conditions could

7    be harsh, and it would be appropriate for you to reduce

8    someone's life expectancy if they were in custody; but if you

9    were going to do that, to be statistically accurate, to be

10   fair, you would then have to raise it for other factors.  And

11   he went through this.

12           THE COURT:  Because he won't get hit by a car on a

13   street or --

14           MR. BRUCE:  He actually went through and gave me

15   some examples; and this person, I'll tell the Court, before he

16   broke into some very complicated statistical terminology which

17   I was unfamiliar with, he said basically:  Look, a person in

18   federal prison, they have access to some form of medical care

19   and some form of medication.  Many people in the United States

20   have none.  That would be a plus factor the Court would have

21   to add in if you subtracted for the prison system.  It may not

22   be the best medical care or the best medication, but it's

23   better than many people have throughout the country.

24           He said another factor that has to make an impact

25   on people's life expectancy is the quality of their water

1    supply and the quality of their food.  He said, you know,

2    prison might not have the best food, but it's three square

3    meals a day; and the water is clean, or at least much cleaner

4    than many parts of the Southern United States and the

5    Southwest United States.

6            If -- again, if you're going to reduce it for being

7    in prison, increase it for those people -- you have to

8    increase it because he has better water and better food than

9    many people in the United States.

10           He said if you look at the third major factor they

11   consider, which is biologically hostile or toxic work

12   environments -- those people who work in factories who are

13   around toxic chemicals, those people who work in jobs

14   involving coal mines, other things -- that would significantly

15   reduce.  He said there are many citizens in the United States

16   who live that way.  In a prison, he is not going to be exposed

17   to that type of factor.  So if you're going to reduce it for

18   being in prison, you have to raise it back up for that.

19           And, finally, he said in terms of general quality

20   of life, while a prison may be a hostile environment and

21   certainly one you don't want to live in, it does afford him

22   the chance to exercise.  He will have heat during the winter.

23   He will not be living outside or in a situation where he's

24   exposed to the elements continuously.

25           And this gentleman explained to me those are all

1    statistically significant factors that have a much more

2    serious impact on someone's life than being incarcerated.

3           So while he agreed with me that, yes, being in

4    prison is not a good situation and a lay person's gut reaction

5    may be your life expectancy will be reduced by being in

6    prison, in fact, compared to many people in the United States,

7    it's better.  And since the actuarial table is generated by

8    the National Center for Health Statistics and does encompass

9    the United States and all U. S. citizens, being in prison

10   makes no statistical difference.

11          The heaviest two factors -- heaviest three factors,

12   as he explained to me, were first your race because your

13   genetic background has an effect.  Simply stated, whites tend

14   to live longer than blacks.  He said that's a statistically

15   significant fact.  Number two, your sex.  Women live longer

16   than men, fact.  And third, the year in which you were born.

17   The later you were born, the likelier you will live longer.

18          THE COURT:  Does he have any statistics on whether

19   you live longer, more or less, if you don't have any sex,

20   since not having sex is supposed to be part of prison?

21          MR. BRUCE:  I didn't ask him of that statistical

22   factor.

23          THE COURT:  Okay.

24          MR. BRUCE:  In any event, I think that was

25   significant.  He said basically nothing that I -- I hope that

1   was educational.  Frankly, it was for me.

2              THE COURT:  It was.  In fact, I enjoy counting and

3   statistics and took a number of those classes.  So, actually,

4   where he led you didn't surprise me because then he could have

5   taken into the fact that X number of people in the United

6   States will die in an airplane accident or struck by a car on

7   the street or hit by lightning, and none of those things have

8   happened in a Federal Bureau of Prisons facility for years.

9              MR. BRUCE:  Well, I hope they -- I don't think they

10  will any time soon.  So the bottom line he was saying was --

11             THE COURT:  Stick with the standard statistics.

12             MR. BRUCE:  Stick with the standard.  If you're

13  going to start isolating a factor and say while you're in

14  prison you are going to have a decreased life expectancy,

15  that's fine; but then you better increase it by all the

16  benefits you get by being in prison.

17             THE COURT:  The only other thing we have to take if

18  we want to really do that is we have to know whether his

19  current health was normal or not or we had some other factors,

20  high blood pressure, sickle cell anemia, things like that.

21             So what -- bottom line, what did he tell you as far

22  as how long Mr. Jones is supposed to live?

23             MR. BRUCE:  Since Mr. Jones is a black male born in

24  1976, he will live 62 -- on average, according to the

25  actuarial table, 62.9 years.

USA v. PHILIP D. JONES, Case No. 02-20014

1              And by the way, Your Honor, --

2              THE COURT:  Less than I thought.

3              MR. BRUCE:  I will tell the Court that the entire

4    table is available on the Internet at the National Center for

5    Health Statistics.  It's downloadable, and I can provide the

6    Court with a copy, and I'll be glad --

7              THE COURT:  So 62 and half.

8              MR. BRUCE:  62.9 -- basically 63.

9              THE COURT:  Okay.

10             MR. BRUCE:  So based upon that, Your Honor, as I

11   was saying before, trying to find out what the middle of the

12   range was, I took the fact that Mr. Jones, if he lived to be

13   63 -- he's 26 right now.  That means he has basically 37 years

14   of life more or less to look forward to.  That gave me a range

15   of 30 to 37 years if we're talking hard numbers; and I'm sure

16   the Sentencing Commission when they say 360 to life was not

17   looking for us to do that type analysis; but I thought in this

18   case it would be more appropriate to do so.  So I did.

19             So by way of -- to make a long story shorter, by

20   way of sentence of Mr. Jones, I'm going to recommend a

21   sentence of 35 years, not 45, not 40 which in the past I might

22   have 40, somewhere between 30 and 60.  I think in this case,

23   Your Honor, a 35-year sentence is appropriate.  And in doing

24   so, Your Honor, let me tell you I factored in his criminal

25   history, the fact that he is not -- doesn't have a clean

1    criminal history, but also it's not the harshest.  I

2    calculated the chance he would have for good time, 85 percent

3    reduction, the time he already spent in custody, the time he

4    already spent here in custody.

5            And, Your Honor, if you would sentence the

6    defendant to a term of 400 -- 420 months imprisonment, that's

7    35 years, he can expect to be released in approximately 27

8    years, basically about a 27-year sentence.  That would put him

9    at 54 years old.  And bearing all the factors, I thought that

10   was an appropriate sentence.

11           I would also ask you to impose an eight-year period

12   of supervised release.  No fine, the defendant does not have

13   the ability to pay a fine, and he does have the $100 special

14   assessment which is due and payable immediately today.

15           THE COURT:  Thank you.

16           MR. BRUCE:  Unless you have any questions, Your

17   Honor, about my math, that's all I have.

18           THE COURT:  Nope.  I'll accept the math.

19           Mr. Taylor, you may be heard.

20           And, Mr. Jones, you'll get a chance to address the

21   Court before the Court imposes sentence.  You're not required

22   to address the Court; but if you do wish to, you'll be given

23   that opportunity.

24           MR. TAYLOR:  May it please the Court, Mr. Bruce.

25           Your Honor, 360 months, given the guidelines, is

1    severe in and of itself; but since the Court must, of course,

2    follow the guidelines, we would argue for that minimum

3    sentence.

4            Your Honor, in looking at this defendant's record,

5    he has been a nonviolent criminal.  He has a misdemeanor

6    obstructing a peace officer offense.  He has possession with

7    intent to deliver cannabis, Class 4 under State law.  He has a

8    fictional Class 3 attempt delivery of controlled substance

9    which I intend to address later on in my argument.

10            He has been in the past, Judge, a seller of drugs,

11    but he has been a nonviolent criminal.  There was no direct

12    harm done to a victim in this case.  Nonetheless, there is

13    clearly indirect harm done to the public when large amounts

14    or, in fact, any amount of cocaine is transferred and

15    delivered in the State.

16            Your Honor, I'd go outside the record; and I know

17    that my colleague and friend, Mr. Bruce, will indulge me in

18    allowing me to do so, Your Honor.  Although I am the third

19    attorney on this case, Your Honor, and although my client

20    directly communicated to the Court which is his right, Judge,

21    and on that basis whereas one might think that my client has

22    been difficult, Your Honor, I want to proffer to the Court

23    that in the -- I don't know, Judge, 200 court appointments I

24    have per year in State Court, this has been truly one of the

25    more pleasant, sincere, cooperative, gentle clients that I've

USA v. PHILIP D. JONES, Case No. 02-20014

1    had.

2          In my meetings with him at DeWitt, in the holding

3    cell -- and we've spent some hours together, Judge -- our

4    conversations range from Biblical passages, the deprivation of

5    DeWitt County prisoners of a pastor to come in on a regular

6    basis.  We talked about alcohol and drug addictions in his

7    family, Your Honor.  And in every conversation that I've had

8    and throughout the jury trial in this case, Your Honor, this

9    client has been nothing but polite and respectful and kind and

10   warm to me, Judge.

11         Now, I know that's belied in the fact that he has a

12   '94 and a '99 felony conviction in State Court, Judge, for the

13   sale of drugs.  But it's been my observation, Judge, over the

14   years that sadly enough and ironically enough those who deal

15   drugs, Your Honor, see it as a business.  It's a business

16   transaction, Judge.  And those individuals, I think, either

17   blind themselves, Your Honor, rationalize, or quite frankly

18   are ignorant of the harm that drug sales does in our society.

19   So we so many times, Judge, deal with the duality of human

20   nature where someone who appears before you as a career

21   criminal offender with 768 grams of cocaine, if one is to

22   accept the jury verdict, Your Honor, could at the same time,

23   Judge, be a kind and humane individual.  I submit to you,

24   Judge, that is the case here.

25         And I submit that to you, Judge, not to in any way

USA v. PHILIP D. JONES, Case No. 02-20014

1    indicate to you that this is an individual that deserves

2    leniency because he's a pleasant fellow.  But, rather, Your

3    Honor, because I think it's probative on rehabilitative

4    potential; and if you sentence him to 30 years, Judge, with

5    the 85 percent figure, Judge, which is the minimum, he would

6    still, Judge, after spending over 20 years in the Federal

7    penitentiary and availing himself of those programs that are

8    there, Your Honor, he has significant rehabilitative

9    potential.  And, Your Honor, we believe that augments our

10   position that he be sentenced to the minimum.

11           Let me speak a minute, Your Honor, about the career

12   criminal offender status.  This goes not to any challenge of

13   the very complete, detailed, and accurate report prepared by

14   Ms. Brown but, rather, Your Honor, to discuss what I consider

15   to be the humanity of this sentencing.

16           Curiously enough, Your Honor, on a common sense

17   level, my client's concerns about being deemed a career

18   criminal, Judge, are right.  Now, Mr. Bruce states and we

19   readily accept the argument that the higher courts have told

20   this Court one cannot reexamine the underlying State felony

21   conviction which results in career criminal status.  But, Your

22   Honor, I submit it to you because it's that very criminal

23   conviction in 1994 that unwittingly set this defendant up for

24   career criminal status for the draconian sentence he is to

25   receive today.

1      What happened there, Judge, was that the charge of

2  a Class 1 and a Class 4, Judge, was somehow in a plea bargain,

3  Your Honor, created in a fiction of a Class 3 attempt unlawful

4  delivery of controlled substance.  Now, how did that happen,

5  Judge?  I don't know.  I wasn't there.  But I can say this,

6  Judge, under State law unlawful possession with controlled

7  substance with intent to deliver more than one gram of cocaine

8  is a 1, Judge, and if it was reduced merely to a Class 2

9  unlawful possession with intent to deliver controlled

10 substance less than one gram, Judge, the only way to get that

11 to a 3 would be to designate it an attempt and it

12 automatically becomes a 3, Judge.

13      But the curious thing is, Judge, unlawful with

14 intent to deliver a controlled substance, Judge, is already an

15 attempt crime.

16      Your Honor, I note also on behalf of my client he

17 earned a GED in 1994 while in the Youth Center, Judge, on a

18 juvenile adjudication.  He clearly, Your Honor, has

19 rehabilitative potential.

20      Judge, in closing, I will note that one of your

21 former colleagues, Justice Webber of the Fourth District, back

22 in 1981 when I made this argument before him in Springfield

23 over 22 years ago, waved it off with a hand and in his opinion

24 he said, "Well, counsel argues that this is disparate

25 sentencing."  And Justice Webber said in his opinion in

1    rejecting my argument for my client on appeal, he said,

2    "Sentences are like snowflakes.  No two are alike," Judge.

3    And that's probably true here, Your Honor.

4            But in arguing for the minimum, Your Honor, I note

5    that yesterday in State Court on a first degree murder case,

6    Your Honor, that I tried last month, my client got 55 years.

7    That's on a first degree murder case, Judge.  Mr. Bruce and I

8    have another case right now, the allegation is as an armed

9    robbery, Judge, at a bank where the defendant waved a loaded

10   gun in a clerk's face.  Maximum he'll face is 20 years, Your

11   Honor.

12           Your Honor, I would ask the Court after considering

13   all factors to impose a minimum sentence.  Thank you so much,

14   Your Honor.

15           THE COURT:  Thank you, Mr. Taylor.

16           Mr. Jones, if you wish to address the Court, you

17   may, and Mr. Taylor will accompany you to the podium.

18           DEFENDANT JONES:  Your Honor, I'm 26 years -- I'll

19   be 27 this year.  I know by law you got to send me between a

20   certain guideline.  But take this in consideration.  Since

21   this whole ordeal happened, my first child -- the only child I

22   got -- been born.  I never got to hold my child yet, touch him

23   or smell him.  And I just ask for the minimum sentence, at

24   least try to salvage a relationship with him.

25           THE COURT:  Can I ask you a question.  It's not

USA v. PHILIP D. JONES, Case No. 02-20014

```
1    going to be a real personal or difficult question, but you

2    grew up in Decatur and spent your whole life there?

3                DEFENDANT JONES:  Yes.

4                THE COURT:  Did you ever know Thomas Ellzey?

5                DEFENDANT JONES:  I heard of him.

6                THE COURT:  Okay.  Did you ever hear what happened

7    to him?

8                DEFENDANT JONES:  Thomas?

9                THE COURT:  Yes.

10               DEFENDANT JONES:  You talking about William Ellzey?

11               MR. BRUCE:  I think you're talking about William,

12   Thomas' younger brother.  We prosecuted both of them.

13               THE COURT:  But which one went away for life?

14               MR. BRUCE:  William.

15               THE COURT:  And Thomas ended up cooperating against

16   his brother, right?

17               MR. BRUCE:  Correct.  And Thomas received, I think,

18   about a 26-year sentence, and William got life.

19               THE COURT:  But, I mean, were you aware of the

20   Ellzeys and the big sentences they got?

21               DEFENDANT JONES:  Yes.

22               THE COURT:  Okay.  That's what -- you're the first

23   person that I've had in here in the last few years to even

24   acknowledge even knowing about them.  So I -- that's -- that

25   was my only curiosity in that regard.
```

USA v. PHILIP D. JONES, Case No. 02-20014

1      Anything else you wish to say?

2      DEFENDANT JONES:  No.

3      THE COURT:  Okay.  You may have a seat.

4      The reason I brought up Mr. Ellzey was that it's a

5  similarity that comes up in these cases.  He was the first

6  trial I had as a district judge.  I had lots of drug cases and

7  murder cases when I was a State Court judge, and I also spent

8  13 years representing people as Mr. Taylor does as a part-time

9  public defender.  It's not our full-time job but part time.

10 And there's just -- you know, the road not taken, that old

11 poem, comes up so many times as you look at what happens in

12 people's lives.

13      One of the Ellzey family members decided "I'm not

14 going away for 360 months and the rest of my life" and, of

15 course, had a difficult decision because he ended up having to

16 cooperate and assist against his brother.  Probably one of the

17 most difficult decisions any person could make.

18      Mr. Ellzey when he came in, William Ellzey, for the

19 life sentence looked at me and said, "Judge, you probably

20 wonder why I'm willing to go to prison for the rest of my

21 life."  He said, "I'm not wanting to, but I'm not gonna ruin

22 anybody else's life to try to cut my sentence.  I got myself

23 into this.  I'm not gonna ruin anybody else's family, anybody

24 else's life to try to reduce it."

25      And then I think he put a little shot in for his

1    brother and others in that case.  He said, "I'll be taken care

2    of by the system, and I don't know how the others will be

3    treated.  That will be their problem."

4            So, of course, he was head of the Gangster

5    Disciples in Decatur at that time back in the early '90s.

6            Mr. Chamley in this case thought you were nuts.

7    You're not nuts.  Not at all.  You're exactly what Mr. Taylor

8    said.  You're a very intelligent young man.  But he couldn't

9    understand why you wouldn't cooperate and assist.  So he

10   thought maybe if we get you examined between, you know, him

11   and the analysis that somehow you'd decide to cooperate and

12   assist.

13           And, very frankly, I thought that you'd make a

14   change of heart after you saw the lady that was in the car

15   with you, very compelling testimony.  She said, "No, I didn't

16   write you that letter, Judge.  That, that didn't -- somebody

17   must be framing me."  Looked at -- and that was -- all of a

18   sudden it was like the light bulb came on in her head why she

19   was here.

20           And I believed her.  The jury believed her.  And

21   maybe you've been totally framed and set up.  But I would have

22   thought that the light would have come on in your head that

23   she's a good witness.  She's telling what appears to be the

24   truth.  And she's not going to take the rap for throwing the

25   drugs out the window.  The jury's going to believe her.  The

1   judge is going to believe her.

2          And so you said you wanted a trial, and so I

3   appointed your third lawyer, an excellent lawyer.  Mr. Taylor

4   cares, concerned, and willing to give you what you wanted,

5   your trial.  And he did a very good job at trial as he has

6   today.

7          But you've put the Court in the position of having

8   to sentence you to more time than I think you deserve, and I

9   don't have any choice in that matter.  But you know what?  You

10  put me in that situation, too.  Just like you put you in the

11  situation of -- I think it was Anita Gray in the car with you.

12  Now you're putting me in the same situation.  All of a sudden

13  you're throwing it off on us as a problem.  You're putting me

14  having to make the decision as to well-settled law, career

15  offender, something that all three lawyers have talked to you

16  about.

17         So maybe there's a sense of pride in you that

18  William Ellzey had that "I'm not going to try to push my

19  problems off and ruin somebody else's family by cooperating

20  and assisting, telling them where I went to in Chicago,

21  telling them how I'll set up a deal for them."  And that's

22  your right, and I'm not going to punish you for that.

23         But you're not a hardened criminal.  Mr. Taylor's

24  right.  You're not.  I've always felt watching you speak and

25  write in which you've done many times that you deserve a

1    better fate, but these are the cards that you were dealt and

2    you decided to stand on them.

3            I don't know if you ever played blackjack; but when

4    the dealer's got the ace up and you've got a two down, all of

5    a sudden the odds aren't real good.  And after Anita Gray

6    testified at the suppression hearing, your cards weren't very

7    good, and you decided to play them.

8            So I'll go to bed tonight and sleep well knowing

9    that you received a sentence that I believe is excessive

10    because the career offender for you fits what Mr. Taylor said.

11    You're not that hardened, violent dangerous person.

12            And because you're not, I want you to have some

13    life, or as you said, it won't be holding a baby.  It's gonna

14    be talking to somebody who's going to want to know from you

15    why you chose to spend 30-some years of your life away from

16    them, especially if that child learns of the system.  "Dad,

17    why didn't you just cooperate and assist?  Why didn't you just

18    lower your sentence?  Think of all those years that you

19    weren't with me.  Were those other people in the drug business

20    so important that you protected all of them?  Were they in

21    your audience caring about you?  Did they even spend the time

22    to visit you or talk to you about the things that Mr. Taylor

23    did?"

24            You're going to have a lot of contemplating the

25    affairs of life.  I hope you write that child letters like you

1    wrote me.  You're very bright.  You're very intelligent.  Your

2    record is not so severe that if I was given the chance I would

3    sentence you to 30 years.  I never sentenced anybody in a

4    murder case to less than 40 years.

5              And I remember judges in Cook County used to say

6    when we'd be at seminars, "Mike, what are you giving those

7    guys more than 20 years for?"

8              I said because they ought to come out in a

9    different generation.  A 20-year sentence in the State of

10   Illinois -- in the past for murder, you served half which

11   meant you served about nine and a half years.  Sometimes if

12   you killed somebody in the beginning of the decade you could

13   get out before the decade was over.  So I sentenced people 40

14   years at a minimum.  That meant they came out in a different

15   generation.

16             But I can tell you I didn't sentence a lot of

17   people to 60 years.  Half of that would have been 30.  That

18   required a brutal, heinous murder, something real severe.  And

19   when I was doing all that murder sentencing in the State

20   Court, I never thought I'd be giving people sentences

21   equivalent to murder sentences for the drug business, and that

22   is obviously the way many people look at it.

23             I recently even had a minister write a letter --

24   and I'm glad the government didn't comment, and I'm glad the

25   minister didn't show up because I would have said something,

USA v. PHILIP D. JONES, Case No. 02-20014

1   which basically said on the stationery of the church, "Judge,

2   how come you're being so hard on our young men in this

3   community?"   And I thought, well, if a minister views it as a

4   business, then I don't know that we're ever gonna win the war

5   on drugs.

6           So my sentence to you isn't out of anger.  It isn't

7   because I believe that you deserve 30 years.  It's because

8   that's the law, and I have to enforce it and administer it.

9   So you made this choice.  Mr. Taylor gave you a fair trial.

10  The Court, I believe, gave you a fair trial.  And I'm going to

11  give you the minimum sentence, but you shouldn't have put us

12  in this situation.  After Anita Gray testified, you should

13  have thought this thing through, and you should have made a

14  better deal.

15          In fact, in some cases the worst people in the

16  world come out with the best sentences because they make the

17  best deals because they know the right people, and they've got

18  the most people that they can bring into the web.

19          So if Mr. Ellzey was right and the system will take

20  care of you for not ratting and ruining anybody else's life,

21  then Mr. Bruce is going to be right that you're going to have

22  some time and you're going to have more time because of my

23  sentence.  But this is the hand you dealt yourself, and it's

24  the hand you played on the wrong table in the wrong venue.  It

25  wasn't a good bluff.  It wasn't a good hand to play; and,

USA v. PHILIP D. JONES, Case No. 02-20014

1    therefore, I have no choice but to follow the law.

2              So pursuant to the Sentencing Reform Act of 1984,

3    it's the judgment of this Court that the defendant, Philip

4    D. Jones, is hereby committed to the custody of the Federal

5    Bureau of Prisons for a term of 360 months.

6              Upon release from imprisonment, the defendant shall

7    be placed on supervised release for a term of eight years.

8              Within 72 hours of release from the Federal Bureau

9    of Prisons, Defendant shall report in person to the probation

10   office in the district to which he is released.

11             The Court finds the defendant does not have the

12   ability to pay a fine, either immediately or through

13   installment payments.

14             The Court finds the defendant is subject to the

15   mandatory drug testing provisions of 18 USC Section 3583(d)

16   and orders the defendant to submit to one drug test within 15

17   days after being placed on supervision, and two drug tests

18   thereafter as directed by the U. S. Probation Office.

19             In addition to the standard conditions of

20   supervision, the defendant shall comply with the following

21   special conditions.

22             You shall refrain from any use of alcohol and shall

23   not purchase, possess, use, distribute, or administer any

24   controlled substance or any paraphernalia related to any

25   controlled substance except as prescribed by a physician.  You

USA v. PHILIP D. JONES, Case No. 02-20014

1    shall at the direction of the probation office participate in
2    a program for substance abuse treatment, including testing, to
3    determine whether you have used controlled substances and/or
4    alcohol.  You shall pay for these services as directed by the
5    probation office.
6              You shall participate in a program of job training
7    or employment counseling as directed by the probation office.
8              You shall not own, purchase, or possess a firearm,
9    ammunition, or any other dangerous weapon.
10             The law affords you three ways to appeal all of my
11   decisions, the decision on the motion to suppress, the
12   decision on your career -- your career offender status, the
13   sentence that I've imposed, how the trial was conducted, any
14   of the things that may be a violation of your rights,
15   constitutional, procedural, or otherwise.
16             But you must take action, and I don't know if any
17   judge has said these years ago to you in Illinois, but I'll
18   make it clear.  You must take an action to preserve your right
19   to appeal within ten days.  You can do it in one of three
20   ways.  You can direct that the Clerk of the Court file a
21   notice of appeal on your behalf; and if you want that done
22   today, it will be done today.
23             You can write your own notice of appeal and send it
24   to the Clerk of the Court, or you can send the direction to
25   the Clerk of the Court to file a notice of appeal within ten

1    days.  Or you can direct Mr. Taylor to file a notice of appeal

2    on your behalf within ten days.

3         Any of those three methods within the next ten days

4    will perfect your right to appeal all of the issues that I've

5    talked about and any that I did not discuss, everything from

6    beginning to end in your case.

7         Do you have any questions about that, Mr. Jones?

8         DEFENDANT JONES:  No, sir.

9         THE COURT:  The Clerk points out that I did not say

10   anything about a special assessment.  It is mandatory, so that

11   a special assessment of $100 is due and payable today pursuant

12   to statute.

13        The Court's discussed the appeal rights.  Anything

14   further, Mr. Taylor?

15        MR. TAYLOR:  Judge, as we are here in open court, I

16   would ask the Court on behalf of my client to direct the Clerk

17   to file the notice of appeal forthwith.  Thank you, Judge.

18        THE COURT:  The Clerk is so directed at this time

19   to file a notice of appeal on behalf of Philip D. Jones to

20   perfect and protect his right to appeal.

21        The court reporter will be directed in due course

22   to prepare a transcript of all the proceedings necessary for

23   the appeal to the Seventh Circuit Court, and that will be

24   provided at no cost to the defendant due to his indigency.

25        Anything further, Mr. Taylor?

1              MR. TAYLOR:  Your Honor, if necessary would you be

2    as kind if we need to at this point to continue my appointment

3    for the appeal?

4              THE COURT:  If you wish to handle the appeal, yes.

5              MR. TAYLOR:  I would ask that the Court be as kind

6    to do that.

7              THE COURT:  So we will appoint Mr. Taylor -- well,

8    actually continue Mr. Taylor's appointment for purposes of

9    being appellate counsel in this case.

10             And, Mr. Jones, is that your wish also?

11             DEFENDANT JONES:  Yes.

12             THE COURT:  Okay.  That will be acknowledged and so

13   ordered.

14             Anything further?

15             MR. TAYLOR:  Judge, only to say thank you very much

16   for your comments on the record today.  I -- they're helpful

17   to me and I know helpful to my client in understanding the

18   Court's position.  We really do appreciate the way you

19   analyzed the case.  Thank you, Judge.

20             THE COURT:  Well, I wish I could have done more,

21   but that's not to be allowed by the law.  I could fool people

22   and say, "Sentence today will be ten years, 120 months," and I

23   think Mr. Bruce will get on the phone, and that will be

24   stopped before the day's over, within two hours.

25             MR. BRUCE:  That would be an accurate statement,

USA v. PHILIP D. JONES, Case No. 02-20014

1   Your Honor.

2           THE COURT:  And it has been done before.  So I know

3   what following the law means.

4           Ms. Brown, anything further from probation?

5           PROBATION OFFICER BROWN:  No.  Thank you, Your

6   Honor.

7           THE COURT:  Mr. Bruce, anything further?

8           MR. BRUCE:  I have nothing, Your Honor.

9           THE COURT:  Good luck, Mr. Jones.  Stay in touch

10  with your child.

11          MR. TAYLOR:  Thank you, Judge.

12              (Hearing concluded, 2:58 p.m.)

13

14

15              * * * * * * * * * * * *

16

17

18              REPORTER'S CERTIFICATE

19          I, LISA KNIGHT COSIMINI, RMR-CRR, hereby certify

20  that the foregoing is a correct transcript from the record of

21  proceedings in the above-entitled matter.

22          Dated this __2nd__ day of ___March___, 2005.

23

24          _____Lisa Knight Cosimini_____
            Lisa Knight Cosimini, RMR-CRR
25          Illinois License # 084-002998


LISA KNIGHT COSIMINI, RMR-CRR
Official Court Reporter -- U.S. District Court
(217) 384-2290