**E-FILED**
Wednesday, 14 December, 2005  03:18:16 PM
Clerk, U.S. District Court, ILCD

**JOHN TAYLOR**
**ATTORNEY**
**2105 S. ZUPPKE**
**URBANA, IL. 61801**
**217-840-3333**

**12/14/05**

**Donna Brown**
**U.S. Probation Officer**
**201 S. Vine**
**Urbana, IL. 61801**

**Re: Philip Jones 02-20014-001**

**Dear Donna:**

  We are tendering an additional objection to the Modified Presentence Report of November 9, 2005. We are tendering it late, and asking that it be accepted, based on the release date of the *Ortiz* case, attached hereto.

  Defendant objects as a matter of law to paragraph 20 of the Presentence Investigation Report based on new case law, *U.S. v. Ortiz*, 2005 WL 3358920, (7th Circ., December 12, 2005), (slip opinion 03-1471 attached), slip opinion pages 6-12, in that Jones should not be held responsible for accountable conduct:

1.    Not shown to be part of the same course of conduct or common scheme or plan and having no relation to the convicted offense.

2.    Not shown to have common victims, common accomplices, common purpose, or similar modus operandi.

3.    Not having similarity, regularity, and temporal proximity to convicted conduct.


**With best regards,**


**John Taylor**
**Cc: Colin Bruce, AUSA; Philip Jones**

In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-1471

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE ORTIZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:01 CR 147—**James T. Moody**, *Judge.*

ARGUED FEBRUARY 23, 2005—DECIDED DECEMBER 12, 2005

Before CUDAHY, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Jose Ortiz pled guilty to one count of distributing marijuana and two counts of distributing cocaine. At sentencing, the district court found that Ortiz's relevant conduct involved 100 kilograms of cocaine and sentenced him to 240 months imprisonment. Ortiz argues that the government witness's testimony was inconsistent and therefore unreliable. Although we find aspects of that testimony troubling, we decline to find it incredible as a matter of law. Ortiz also appeals his sentence on the grounds that the district court improperly attributed to him quantities of cocaine not part of the offense of conviction. We agree and find that the

additional cocaine that the district court attributed to Ortiz
was not part of the same common scheme or plan as the
crime to which Ortiz pled guilty, and is thus not relevant
conduct. As such, we vacate Ortiz's sentence and remand for
resentencing. In light of this remand, we need not address
Ortiz's arguments under *United States v. Booker*, 125 S. Ct.
738 (2005).

## I. BACKGROUND

Ortiz pled guilty to one count of distributing marijuana
and two counts of distributing cocaine in violation of 21
U.S.C. § 841(a)(1). Ortiz sold drugs from the car repair shop
he ran in Lake Station, Indiana. Unfortunately for Ortiz,
the Drug Enforcement Administration (DEA) launched an
investigation into the northern Indiana drug trade, and had
an informant buy drugs from Ortiz. In his plea, Ortiz
admitted selling drugs to the informant on three occasions:
eight pounds of marijuana in September 2000; five ounces
of cocaine in January 2001; and another five ounces of
cocaine in March 2001.

Around the same time that Ortiz was selling drugs to
the DEA's informant, the DEA began investigating Jay
Zambrana, another drug dealer. During the course of
that investigation, the DEA spoke with Carlos Ripoll,
who told them that he sold drugs for Zambrana, and
that one of his customers was Ortiz. According to Ortiz's
presentencing report, Ripoll told the investigators that he
and Zambrana sold at least 15 kilograms of cocaine to Ortiz
during the years 1997 to 1999.

In Ortiz's presentence report, his probation officer
recommended that the district court include as the drug
quantity for which Ortiz was responsible not only the drugs
that Ortiz sold to the DEA's informant, but also the 15
kilograms of cocaine that he allegedly bought from Ripoll
and Zambrana. In support of that recommendation, the

government called Ripoll as a witness at Ortiz's sentencing hearing. Ripoll testified that he and Zambrana delivered even larger quantities of cocaine to Ortiz than what he previously told the DEA. Specifically, Ripoll testified that he sold Ortiz more than 100 kilograms of cocaine.

In sentencing Ortiz, the district court concluded that Ripoll's testimony regarding the additional 100 kilograms was credible, and concluded that Ortiz should be held responsible for 100 kilograms of cocaine. The district court also denied Ortiz a downward adjustment for acceptance of responsibility, and added two sentencing points for activity occurring during supervised release. Accordingly, the district court sentenced Ortiz to 240 months imprisonment. From this sentence, Ortiz appeals.

## II. ANALYSIS

### A. Waiver of District Court's Relevant Conduct Determination

We find that Ortiz neither waived nor forfeited the issue of relevant conduct and this issue was properly preserved. Waiver is the intentional relinquishment and abandonment of a known right. *United States v. Olano*, 507 U.S. 725, 733 (1993). Waiver differs from forfeiture, which is simply the failure to make a timely assertion of a right. *Id.* Waiver extinguishes any error that the district court may have made and precludes appellate review. *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000). Forfeiture permits plain error review. *Id.* A common distinction we draw between waiver and forfeiture is that waiver comes about intentionally whereas forfeiture occurs through neglect. *Id.*

The government argues that Ortiz waived any right to appeal the district court's relevant conduct determination because he failed to object after the district court specifi-

cally solicited objections to its findings. We find this argument unconvincing. We have held that we construe waiver principles liberally in favor of the defendant. *United States v. Sumner*, 265 F.3d 532, 538 (7th Cir. 2001). The record reflects that Ortiz's counsel objected to the additional drug quantities asserted in the presentence report. Ortiz's counsel filed written objections to the alleged additional relevant conduct. Ortiz's counsel also stated at the sentencing hearing, "Mr. Ortiz argues that his drug quantity should be calculated only on the counts he has pled to . . . Mr. Ortiz would argue to the Court that that's the full extent of his involvement in drugs as it relates to both the indictment and his relevant conduct." Sentencing Hr'g Tr., Vol. II at 10-11. The fact that Ortiz's counsel did not continue to object regarding the additional relevant conduct, after the judge ruled on Ripoll's testimony, does not constitute waiver. In addition, after finding that Ripoll was credible and that the alleged additional transactions should be considered relevant conduct, the district court specifically limited objections to those "other than what you have already argued." Sentencing Hr'g Tr., Vol. II at 30. We have held that when a defendant consistently disputes an issue, and the district court does not specifically elicit objections to the adequacy of the findings, the defendant is not required to interpose a further objection to the adequacy of the district court's findings after the district court has ruled. *United States v. Freitag*, 230 F.3d 1019, 1025 n. 7 (7th Cir. 2000). Ortiz objected to the presentencing report, and he argued at sentencing that the district court should only attribute to him the drug quantity to which he pled. The government is arguing, in essence, that defendants must take exception to district judges' rulings, and the clear language of Fed. R. Crim P. 51(a) states that there is no need to do so. The actions of Ortiz, through his counsel, are sufficient to have preserved this issue.

No. 03-1471                                                    5

## B. Ripoll's Credibility

Ortiz argues that we should find Ripoll's testimony incredible as a matter of law. Although we conclude in this opinion that the district court clearly erred by its relevant conduct finding, we decline to take the additional leap of finding Ripoll incredible as a matter of law. We review a district court's witness credibility determinations for clear error. *United States v. Noble*, 246 F.3d 946, 953 (7th Cir. 2001). We have held that determinations of witness credibility are entitled to great deference and "can virtually never be clear error." *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003) (internal quotation marks and citation omitted). *See also United States v. Ferguson*, 35 F.3d 327, 333 (7th Cir. 1994) ("The district court's evaluation of witness credibility will not be disturbed unless it is completely without foundation."); *United States v. Porter*, 23 F.3d 1274, 1278 (7th Cir. 1994) ("Any argument that the trial judge should have disbelieved a certain witness is doomed at the outset.") We give such a high-level of deference to such findings of credibility because "[t]he trial judge has the best opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." *United States v. Eddy*, 8 F.3d 577, 582-83 (7th Cir. 1993) (internal quotation marks and citations omitted). A credibility determination by a district court using the preponderance standard cannot be challenged on appeal "unless the court credited testimony that was essentially unbelievable as a matter of law." *United States v. Smith*, 308 F.3d 726, 746 (7th Cir. 2002). In order for testimony to be found incredible as a matter of law, "'it must have been either physically impossible for the witness to observe that which he or she claims occurred, or impossi-

ble under the laws of nature for the occurrence to have taken place at all.'" *United States v. McEntire*, 153 F.3d 424, 435 (7th Cir. 1998) (quoting *United States v. Dunigan*, 884 F.2d 1149, 1152 (7th Cir. 1990)).

Ortiz argues that Ripoll's testimony is incredible because of some inconsistencies of Ripoll's testimony. Ripoll testified initially that he saw Ortiz make one purchase of cocaine from Zambrana in 1997. The next purchase Ripoll observed was over a year later in the summer of 1998. Then, after a gap of a couple of months, Ripoll saw Ortiz thereafter purchase from Zambrana weekly, or every two or three weeks. However, later in Ortiz's testimony he said that he saw Ortiz purchase cocaine from Zambrana weekly. Ortiz also argues that, according to the presentence report, Ortiz initially told the DEA that Ortiz had purchased 15 kilograms of cocaine; however, while testifying, this number mushroomed to 100 kilograms. Although this testimony is troubling, it does not meet the standard mandating that we deem it incredible as a matter of law, and we decline to second-guess the credibility findings of the trial judge, who had the opportunity to observe Ripoll firsthand. As we have held, when making a credibility determination, the sentencing court, "may credit testimony that is 'totally uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant.'" *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004) (quoting *Blalock*, 321 F.3d at 690).

## C. Relevant Conduct Determination Was Error

We find that the district court clearly erred when it concluded that Ripoll's allegations concerning the additional 100 kilograms of cocaine constituted relevant conduct. We review a district court's calculation of the quantity of drugs involved in an offense for clear error. *United States v. Bacallao*, 149 F.3d 717, 719 (7th Cir. 1998). A finding of fact

is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. McEntire*, 153 F.3d 424, 431 (7th Cir. 1998) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In calculating a defendant's base offense level under the now-advisory Sentencing Guidelines, "the sentencing court must consider types and quantities of drugs not specified in the counts of conviction but that were 'part of the same course of conduct or common scheme or plan' as the convicted offenses." *United States v. Beler*, 20 F.3d 1428, 1431 (7th Cir. 1994) (citations omitted) (quoting U.S.S.G. § 1B1.3(a)(2)). In *United States v. Duarte*, we noted that this "relevant conduct" or "aggregation rule" "grants the government a fearsome tool in drug cases. It permits prosecutors to 'indict defendants on relatively minor offenses and then seek enhanced sentences later by asserting that the defendant has committed other more serious crimes for which, for whatever reason, the defendant was not prosecuted and has not been convicted.'" 950 F.2d 1255, 1263 (7th Cir. 1991). However, the relevant conduct rule has limits. The rule allows sentencing courts to consider quantities of drugs not specified in the counts of conviction, provided "the unconvicted activities bore the necessary relation to the convicted offense." *Id.* Two or more offenses are part of a common scheme or plan if they are connected by at least one common factor, such as "common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3(a)(2), App. Note 9.

In assessing whether offenses are part of the same course of conduct, we look to whether there is "a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant 'similarity, regularity, and temporal proximity.'" *United States v. Acosta*, 85 F.3d

275, 281 (7th Cir. 1996). Offenses are part of the same course of conduct if they are "part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3(a)(2), App. Note 9. Moreover, "section 1B1.3(a)(2) must not be read to encompass any offense that is similar in kind to the offense of conviction but that does not bear the required relationship to that offense." *United States v. Patel*, 131 F.3d 1195, 1204 (7th Cir. 1997); *see also United States v. White*, 888 F.2d 490, 500 (7th Cir. 1989). We have held that the mere fact that the defendant may have engaged in other drug transactions "is not sufficient to justify treating those transactions as 'relevant conduct' for sentencing purposes." *United States v. Crockett*, 82 F.3d 722, 730 (7th Cir. 1996).

In this case, we are not convinced that the aggregated relevant conduct in question is sufficiently intertwined with the offense of conviction. *See Bacallao*, 149 F.3d at 721. To begin, there is no temporal proximity between the crimes to which Ortiz pled guilty and the relevant conduct which the district court attributed to Ortiz. Ripoll's testimony provides no specific dates for any of the alleged cocaine purchases by Ortiz, other than the loose time frame of "1997 through 1999." Ripoll testified that he first observed Ortiz purchase cocaine from Zambrana in "early 1997", but the next time he supposedly observed Ortiz purchase drugs from Zambrana was not until the "summer of 1998", over a year later. There is, at a minimum, a ten-month gap between Ripoll's arrest in December 1999 and Ortiz's first offense on September 21, 2000, which the government concedes. Such a temporal gap suggests the lack of a common plan or course of conduct. *See United States v. Sykes*, 7 F.3d 1331, 1337 (7th Cir. 1993) (temporal gap of 14 months "tends to indicate conduct that can easily be separated into 'discrete, identifiable units' rather than behavior that is part of the same course of conduct or common scheme or plan") (quoting U.S.S.G. § 1B1.3 background comment); *see also United States v. Mullins*, 971 F.2d 1138, 1144 (4th Cir. 1992)

No. 03-1471                                                        9

(temporal proximity "extremely weak" where uncharged
conduct occurred six months prior to offense of conviction);
*United States v. Hahn*, 960 F.2d 903, 911 (9th Cir. 1992)
(evidence of specific similarity and regularity important
where period of five months separated drug transactions);
*United States v. Jones*, 948 F.2d 732, 737-38 (D.C. Cir.
1991) (embezzlement that occurred over one year before
mailbag fraud not part of same course of conduct or common
plan).

The government argues that this temporal gap problem
can be explained if we make the assumption that Ortiz was
forced to find another supplier after Ripoll's arrest. How-
ever, the record simply does not indicate that this was the
case, and we refuse to make such an assumption. The
government relies on our holdings in *United States v. Ruiz*,
178 F.3d 877, 882 (7th Cir. 1999), and *Sumner*, 325 F.3d at
886 for this proposition. We find the government's reliance
on these cases unpersuasive. Although we did not remand
in *Ruiz* because the error there did not affect the defen-
dant's sentencing range, we did find that the prior drug
activities at issue could not be considered for sentencing
purposes as additional relevant conduct. 178 F.3d at 882.
As in this case, in *Ruiz* we noted that the government was
attempting to link drug transactions "on some occasions" to
behavior that involved weekly transactions. *See id.* at 880,
882. In *Sumner*, we held that the defendant's crack cocaine
dealings were sufficiently similar and temporally proximate
to the relevant conduct the district court found. However, in
that case, the defendant specifically admitted that the
supplier who had been incarcerated was supplying him
drugs before his arrest. There is no such link here.

We have held that without temporal proximity, the
government needs a stronger showing regarding the other
course of conduct factors, such as regularity or similarity of
acts. *Sumner*, 265 F.3d at 541; *Ruiz*, 178 F.3d at 882 (7th
Cir. 1999) ("If the prior incidents are remote in time, a

stronger showing of regularity and similarity may be necessary to support a determination of a single course of conduct."). Here, there is no significant similarity or regularity between Ripoll's allegations and Ortiz's convicted offenses. The regular weekly purchasing activity Ripoll described in his testimony was part of a major, large-scale drug trafficking conspiracy extending throughout Indiana, Michigan, and Illinois. This drug trafficking ring ended in December 1999, with the arrest of Ripoll and others. In comparison, Ortiz's charged offenses consisted of three drug sales that took place over a six-month time span. The sales all took place at one location, the Lake Station car repair shop. The sales only involved Ortiz and the DEA's confidential informant. Additionally, while Ripoll describes Ortiz as exclusively purchasing cocaine, one of Ortiz's convictions involves a different drug, marijuana. Most damning to the government, however, is that Ortiz's three sales occurred in 2000 and 2001, long after the Zambrana/Ripoll conspiracy had been exposed.

The quantity of cocaine involved in the charged offenses and the alleged relevant conduct is also different. Ripoll describes Ortiz as purchasing between one and three kilograms of cocaine a week throughout 1997 to 1999. The two controlled purchases of cocaine between Ortiz and the DEA's confidential informant that took place in January and March 2001 equaled 10 ounces.

In addition, we find nothing in the record indicating that the alleged weekly purchases of cocaine from Ripoll and Zambrana involved the same purpose or modus operandi as Ortiz's convicted offenses. *See Bacallao*, 149 F.3d at 719 (stating courts cannot consider additional drug purchases when there is "no explanation indicating how the alleged purchase involved the same purpose or modus operandi as the convicted offense"). The convicted offenses here do not involve the same participants as the activities described by Ripoll. *See Ruiz*, 178 F.3d at 882 (finding that different

No. 03-1471                                        11

participants indicated that transactions were not part of
same conduct or scheme, even if transactions were similar).
When we compare Ortiz's role in his convicted offenses to
those of the alleged relevant conduct, we also see substan-
tial differences. Ortiz pled guilty to selling marijuana once
and relatively small amounts (when compared to 100
kilograms) of cocaine twice. However, according to Ripoll,
Ortiz purchased large quantities of cocaine on a weekly
basis. As such, we find the government's evidence that the
relevant conduct involved the same purpose or modus
operandi non-existent insufficient.

Finally, the district court did not make specific findings
on the issue of whether Ripoll's allegations involved conduct
relevant to the convicted offense.[1] As we have noted before,
the government's burden at sentencing is considerably
lightened because of the preponderance of the evidence
standard and the relaxed evidentiary rules that govern
sentencing. However, we have also held that the relevant
conduct rule is "not without limits" and "because its
application so favors the government," we insist that courts
be "scrupulous to ensure that the government has adhered
to those limits." *Beler*, 20 F.3d at 1432. One of the ways in
which we ensure that these limits are maintained is by
requiring sentencing courts to "explicitly state and support,

---

[1]  The district court, in making its relevant conduct finding, stated
only the following:

> As to the objection of the Defendant as to relevant conduct,
> and actually we can run that with the base offense level
> together. All my findings here are by a preponderance of
> the credible evidence that the court has in front of it. The
> court does find that the testimony of Carlos Ripoll—I find
> that testimony to be very credible, so, the defendant should
> be held responsible for at least a hundred kilograms of
> cocaine as relevant conduct.

Sentencing Hr'g Tr., Vol. II at 21.

either at the sentencing hearing or (preferably) in a written statement of reasons, the finding that the unconvicted activities bore the necessary relation to the convicted offense." *Id.* (citing *Duarte*, 950 F.2d at 1263). The district court's relevant conduct decision seems solely based on Ripoll's testimony at the sentencing hearing. The district court did not address the fact that Ripoll's assertions regarding over 100 kilograms of cocaine purchases from 1997 through 1999 do not appear anywhere in the presentencing report. Most importantly, the district court did not address any issues of temporal proximity, similarity, regularity, or modus operandi and failed to explain how the events to which Ripoll testified were related to the conduct to which Ortiz pled guilty. The district court's terse findings, combined with our analysis examining the temporal proximity, similarity, regularity, and modus operandi of Ortiz's alleged relevant conduct, all lead us to conclude that the district court's finding that Ortiz was responsible for 100 kilograms of cocaine as relevant conduct was clearly erroneous.

## D. The District Court's Additional Sentencing Determinations

We find that the district court also erred by denying Ortiz a downward adjustment of three points for demonstrating acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b)(1), and by adding two points for activity occurring during supervised release. We review both the district court's acceptance of responsibility and supervised release factual findings for clear error. *United States v. Wetwattana*, 94 F.3d 280, 285 (7th Cir. 1996); *United States v. Trotter*, 270 F.3d 1150, 1153 (7th Cir. 2001). The district court made both of these determinations based exclusively on the alleged relevant conduct at issue here. Because we have already determined that the government's allegations

2:02-cr-20014-MPM     # 112-2     Page 14 of 14

No. 03-1471                                          13

against Ortiz do not constitute relevant conduct, it follows
that the district court's acceptance of responsibility and
supervised release findings are also clearly erroneous.

### E. Ortiz's *Booker* Arguments

Ortiz also argues that his Sixth Amendment rights
were violated when the district judge made a finding by
a preponderance of the evidence regarding Ortiz's alleged
relevant conduct. *See Booker*, 125 S. Ct. at 756. We are
already remanding this case based on our finding that
the district court clearly erred in its relevant conduct
findings. Ortiz must be resentenced in accordance with
*Booker* at that time, obviating the need for us to con-
sider the propriety of a limited remand. *See Paladino*, 401
F.3d at 484.

## III. CONCLUSION

For the reasons stated above, we VACATE Ortiz's sentence
and REMAND for resentencing in accordance with this
opinion.

A true Copy:

     Teste:

                               _____

                         *Clerk of the United States Court of*
                             *Appeals for the Seventh Circuit*

USCA-02-C-0072—12-12-05